### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| GERALDINE ARMSTRONG, | |
| Plaintiff, | No. 18-cv-05919 |
| v. | Judge Thomas M. Durkin |
| VILLAGE OF BELLWOOD, VILLAGE OF BELLWOOD POLICE OFFICERS RENE IBARRIENTOS, JONATHAN ULIN, and JEREMIAH WATTS | |
| Defendants. | |

## MEMORANDUM ORDER AND OPINION

Plaintiff Geraldine Armstrong brings this action against the Village of Bellwood and Bellwood Police Officers Rene Ibarrientos, Jonathan Ulin, and Jeremiah Watts. She alleges federal claims under 42 U.S.C. § 1983 for excessive force, false arrest, and failure to intervene, as well as state claims under Illinois law for malicious prosecution, conspiracy to commit malicious prosecution, battery, intentional infliction of emotional distress, and indemnification. Defendants moved for summary judgment on all claims. R. 50. For the following reasons, Defendants' motion is denied in part and granted in part.

## Background

This case arises from Geraldine Armstrong's short but unfortunate encounter with Village of Bellwood police officers on the morning of October 8, 2017.[1] She and

---

[1] Defendants contend that some of Plaintiff's responses to their Statements of Fact fail to comply with Local Rule 56.1(b)(3), which sets forth the requirements for how a

her son Lionel were at home when they received a phone call from her daughter. R. 52 ¶¶ 1-3; R. 67 ¶ 2. A domestic dispute ensued between Lionel and the daughter, and someone dialed the police. R. 52 ¶¶ 3-4. Bellwood police officers Rene Ibarrientos, Jonathan Ulin, and Jeremiah Watts responded to the call and approached Lionel as he exited his mother's apartment building. *Id.* ¶¶ 14-15.

That is where the undisputed facts more or less end. What happened next depends on which party you ask. According to Defendants, as the officers approached Lionel, he reached for something in his pocket or waistband. *Id.* ¶ 17. The officers told Lionel to show his hands but Lionel ignored them. *Id.* ¶ 18. Officer Ulin then attempted to perform a pat down. *Id.* ¶ 19. Lionel resisted, however, so all three officers decided to restrain him and they eventually took him to the ground. *Id.* ¶ 19-21. Lionel was then escorted to the squad car, but he continued to resist and started to lunge at the officers. *Id.* ¶ 22. Fearing for his safety, Officer Ulin took Lionel to the ground again. *Id.* ¶ 23. Around this time, Plaintiff came out of her apartment building agitated and screaming. *Id.* ¶ 24. The officers told her to "stay back, go back in the

---

non-moving party must respond to a movant's statements at summary judgment. *See* R. 68 at 1-2. The Court has reviewed the responses that Defendants deem insufficient and finds that the majority comply with the local rules. However, the same cannot be said regarding Plaintiff's responses to Statements of Fact ¶¶ 29 and 30. Plaintiff's responses state that she did not "run" past the officers or towards Officer Ulin, but Plaintiff fails to cite to any portion of the record in support of this assertion, as is required under L.R. 56.1(b)(3)(B). A party's failure to abide by the local rules may result in the Court deeming statements of fact admitted. *See Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). Defendants' Statements of Fact ¶¶ 29 and 30 are admitted to the extent they contend that Plaintiff ran past the officers and toward Officer Ulin.

house." R. 52-1 at 171 (Watts Dep. 77:18-21). But Plaintiff ran past Officer Ibarrientos and landed on Officer Ulin's back, who was on Lionel at the time. R. 52 ¶ 30-31; Watts Dep. 77:1-14; Ibarrientos Dep. 76:2-11. Within seconds, Officers Watts and Ibarrientos grabbed Plaintiff's arms and pulled her off of Officer Ulin. R. 52 ¶ 3; Watts Dep. 80:13-21; Ibarrientos Dep. 81:1-8. Officer Watts immediately told Plaintiff that she couldn't interfere with Lionel's arrest and that she would be arrested herself. R. 52-1 at 172 (Watts Dep. 81:21-25). As the officers attempted to place Plaintiff's arms behind her back, she tensed up and began to pull away. *Id*. at 173 (Watts Dep. 85:19-24). Unable to place the handcuffs on Plaintiff, Officers Watts and Ibarrientos applied more pressure to Plaintiff's arms. *Id*. (Watts Dep. 86:2-4). She was eventually handcuffed and moved to a squad car. *Id*. at 174 (Watts Dep. 89:17-21).

Plaintiff disputes this account. According to her, when the officers arrived at the scene, Lionel was attempting to walk away and never reached toward his pocket or waistband. R. 66 ¶¶ 17-18. She also points out that Lionel testified at his criminal trial that he was only taken to the ground once, not twice, and not while being escorted to the squad car. *Id*. ¶ 22. She says that when she came outside—wearing a robe, nightgown, and house shoes—she made repeated attempts to de-escalate the situation by informing the officers that she was okay and asking them to call dispatch. *Id*. ¶ 5. She heard Lionel tell the officers that he had a bullet fragment in his back, and that he was in pain because Officer Ulin was pressing his knee against Lionel's spine. Id. ¶ 7. Fearful of her son's safety, Plaintiff told Officer Ulin to stop "trying to cripple my child." R. 52-1 at 9 (Armstrong Dep. 28:17-22). None of the officers

3

acknowledged her or otherwise ordered her to stand back. R. 67 ¶ 9. Plaintiff then moved toward Officer Ulin and placed two fingers on his knee, hoping to remove it from her son's back. *Id*. ¶ 12. Officer Ibarrientos reacted by grabbing Plaintiff's hand and flipping her body to the left and onto the ground. *Id*. ¶ 18. Because she was wearing only a robe, nightgown, and house shoes at the time, Officer Ulin saw her private parts. *Id*. ¶ 25. When she was arrested shortly thereafter, she says that she didn't try to resist, as the officers contend; rather, her house shoe fell off during her walk to the police car and she was simply trying to put it back on. *Id*. ¶ 21; R. 66 ¶ 38. She also says that Officer Ulin squeezed her handcuffs until her bones hurt, and when she complained of the pain, he squeezed them even harder. R. 67 ¶ 22. At the police station, she reported that her hand or thumb was numb. *Id*. ¶ 23.

Both parties agree that after the incident, Plaintiff was charged with two counts of obstruction and one count of resisting a police officer. R. 52 ¶ 42. She was found not guilty on all charges by a directed verdict. R. 52 ¶ 29. Plaintiff subsequently filed this action in August 2018. R. 1.

### Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir.

4

2018). To defeat summary judgment, a nonmovant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## Analysis

### I. Fourth Amendment Claims

### 1. Excessive Force (Count I)

Plaintiff contends that the officers violated her civil rights under 28 U.S.C. § 1983 by using excessive force on two separate occasions: once when she was removed from Officer Ulin, and again when Officer Ulin tightened her handcuffs after the arrest. R. 65 at 5-9. The Court addresses each occasion in turn.

### A. Removal from Officer Ulin

Claims that a police officer used excessive force in the course of an arrest are subject to the Fourth Amendment's reasonableness standard. *Johnson v. Scott*, 576 F.3d 658, 660 (7th Cir.2009) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "Law enforcement is a difficult job, as 'police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving.'" *Baird v. Renbarger*, 576 F.3d 340, 342 (7th Cir. 2009) (quoting *Graham*, 490 U.S. at 397). Therefore, the "reasonableness" of the use of force is judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight,

and the officer's subjective good or bad intentions do not enter into the analysis. *Graham*, 490 U.S. at 396–97. Instead, the factors that a court must consider include: "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. In the end, the excessive force inquiry "looks to whether the force used to seize the suspect was excessive in relation to the danger he posed—to the community or to the arresting officers—if left unattended." *Jacobs v. City of Chi.*, 215 F.3d 758, 773 (7th Cir. 2000) (internal citation and quotation marks omitted).

Plaintiff asserts that summary judgment is inappropriate because the material facts relevant to the *Graham* factors either weigh in her favor or are in dispute. The Court agrees. First, the severity of the charges involved in this case—obstruction and resisting a peace officer—are misdemeanors and relatively minor.[2] Second, the parties dispute whether Armstrong was a threat to the officers: she says that she tried to defuse the situation by telling the officers that she was okay and asking them to call dispatch, while the Defendant Officers argue that she came out of the apartment building yelling and agitated. She also contends that she placed two fingers on Officer Ulin's knee, while they argue that she jumped on his back. As to the third factor, whether Plaintiff actively resisted arrest, she says that she did not while the Defendant Officers argue otherwise. In any event, Plaintiff was handcuffed

---

[2] The Defendants do not disagree, conceding that the "severity of the crime was minimal." R. 51 at 5.

*after* the use of force was applied, so whether she actively resisted is less relevant here. Finally, the two parties paint very different pictures of what happened after Plaintiff touched Officer Ulin. Plaintiff says that she was flipped in the air and landed on the ground with her private parts exposed at some point in the process. By contrast, Officers Ibarrientos and Watts contend that they simply grabbed Plaintiff's arms and pulled her off of Officer Ulin. It follows that a genuine issue of material fact exists as to whether the force used against Plaintiff "was excessive in relation to the danger [she] posed" to the officers. *Jacobs*, 215 F.3d at 773.

Against this, Defendants advance several arguments, but none are persuasive. First, Defendants contend that even if some material facts are in dispute, summary judgment is appropriate under *Dawson v. Brown*, 803 F.3d 829 (7th Cir. 2015). In *Dawson*, a suspect physically resisted arrest outside his father's home. The father approached the arresting officer while he was still attempting to subdue the suspect. The arresting officer kicked the father away and another officer tackled him. The father brought an excessive force claim and the district court granted summary judgment in the officers' favor. The Seventh Circuit acknowledged that there were some factual disputes as to when the officer tackled the father but nonetheless affirmed the district court's dismissal.

*Dawson* and this case share similar facts, but the rationale justifying *Dawson*'s holding is absent here. Indeed, *Dawson* concluded that the officer's tackle was reasonable because the father approached the officer as he was "struggling to arrest a suspect who . . . was *still physically resisting arrest*." 803 F.3d at 834 (emphasis

7

added); *see also id.* ("Officer Warnisher was in a dangerous position due to his inability to subdue a non-compliant suspect. Dawson came within three to four feet of Officer Warnisher while he was in this dangerous situation."). By contrast, the parties here agree that Lionel was *not* actively resisting arrest when Plaintiff made physical contact with Officer Ulin. R. 69 ¶ 13 ("Lionel Armstrong was not actively resisting at the time [Plaintiff] made physical contact with Officer Ulin."). The Court cannot say, then, whether Officer Ulin encountered the same level of danger in this case that the Seventh Circuit considered determinative in *Dawson*. Furthermore, the Court must view the record in the light most favorable to Plaintiff, and she asserts that the officers flipped her body onto the ground. A tackle is different from a flip, and depending on the circumstances, the latter could involve more force than the former. But at this stage in the proceedings, without the benefit of additional evidence, the Court is not well-positioned to make that determination. *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 862 (7th Cir. 2010) (cautioning against summary judgment in excessive force cases because "evidence surrounding the officer's use of force is often susceptible to different interpretation").

Defendants argue next that Officers Ibarrientos and Watts acted reasonable under the circumstances because they used force only in direct response to Plaintiff's obstruction. R. 51 at 6. But none of the cases that Defendants cite support this proposition, nor do they involve factual allegations similar to those at issue here. For example, in *Davis v. Frantz*, the Seventh Circuit in an unpublished opinion concluded that an officer did not use excessive force in spraying mace because, unlike here, the

undisputed facts showed that the plaintiffs actively resisted their arrests. 1999 WL 370047, *3 (7th Cir. 1999). *Stainback v. Dixon* is likewise inapposite because the court concluded there that the officers did not use handcuffs in a manner that would clearly injure or harm a typical arrestee—a finding not relevant here. 569 F.3d 767, 773 (7th Cir. 2009). Finally, the Seventh Circuit in *Brooks v. City of Aurora* concluded that the officers who used pepper spray were protected by qualified immunity, not that their actions were reasonable under the circumstances. 653 F.3d 478, 486 (7th Cir. 2011).

Defendants likewise contend that Officers Ibarrientos and Watts acted reasonably because they could have believed that Plaintiff posed a threat to their safety. They say that she "walked or ran past" them on her way to Officer Ulin. But even if she did, Defendants' argument is belied by Plaintiff's contention that she repeatedly tried to diffuse the situation by telling the officers that she was okay. *See* R. 52-1 at 8 (Armstrong Dep. 23:9-23). According to Plaintiff, her attempts to de-escalate went unheard, and it wasn't until after she tried to engage the officers that she moved toward Officer Ulin. *Id.* at 9 (Armstrong Dep. 28:3-29:6). Defendants' argument that Plaintiff was threatening is therefore unavailing at this stage in the proceedings.

Finally, Defendants contend that are entitled to qualified immunity even if they violated Plaintiff's constitutional rights. "The doctrine of qualified immunity protects government officials from liability when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Alicea v. Thomas*, 815 F.3d 283, 291 (7th Cir. 2016). The qualified

immunity inquiry involves two questions: (1) whether a plaintiff's constitutional rights have been violated; and (2) whether the right at issue was "clearly established" at the time of the alleged misconduct. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Hanes v. Zurick*, 578 F.3d 491, 493 (7th Cir. 2009). To determine whether the law is "clearly established," courts must not define "clearly established law at a high level of generality." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). The right must be clearly established in a particularized sense. *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 731 (7th Cir. 2013). Nevertheless, "a case directly on point is not required for a right to be clearly established and officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Id.* (internal citations and quotation marks omitted).

Plaintiff argues that it had long been established by October 2017 "that police officers [may] not use significant force on nonresisting or passively resisting suspects." R. 65 at 10 (citing *Abbott*, 705 F.3d at 727). She is correct—"only a minimal amount of force may be used on such arrestees." *Abbott*, 705 F.3d at 732. But as stated earlier, whether the officers used significant force on Plaintiff and whether she was a passively resisting suspect are two issues that remain unresolved at this stage. According to Plaintiff's version of the facts, her body was flipped in the air and she landed on the ground without first being warned by the officers to stay back. To this point, she even tried to tone down the situation without any reaction from the officers. And although the undisputed facts show that she made some contact with Officer

Ulin, a reasonable jury could conclude that she exhibited passive noncompliance and not active resistance. In such a situation, it's likely that qualified immunity would not apply.

Defendants argue that even if the Court accepted Plaintiff's story, there was no clearly established right at the time of the incident prohibiting officers from flipping a suspect under the circumstances. R. 51 at 8. Defendants point to *Dawson v. Brown*, but the Court has already distinguished that case from the one at bar. Unlike here, *Dawson* involved a father who approached an officer while the officer was attempting to arrest an actively resisting suspect. Further, *Dawson* did not involve a body flip. Defendants also rely on *Findlay v. Lendermon*, which involved a sheriff's deputy who allegedly tackled a suspect to the ground. 722 F.3d 895, 898 (7th Cir. 2013). *Findlay* is not instructive, however, because the holding there focused on plaintiff's underwhelming briefing materials and did not otherwise address the sheriff's conduct. To this point, the court went out of its way to say that "we do not suggest that no 'plainly excessive' argument could ever be made from the facts as [plaintiff] presents them. But the burden to make this showing rests squarely on [plaintiff]. He has not done so and therefore cannot prevail." *Id*. at 900. Defendants also point to *Fitzgerald v. Santoro*, 707 F.3d 725 (7th Cir. 2013) but that case concerned an "arm bar" and "wrist lock," which involve significantly less force than flipping a body onto the ground.

Because the facts in this case are still heavily in dispute and tied up in the qualified immunity analysis, the Court cannot resolve the qualified immunity issue

in the officers' favor at this time. *See Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009) ("When the qualified immunity inquiry cannot be disentangled from disputed facts, the issue cannot be resolved without a trial."); *Strand v. Minchuk*, 910 F.3d 909, 918 (7th Cir. 2018) ("[A] dispute of fact regarding the circumstances surrounding an officer's use of force may prevent us from determining whether an individual's clearly established rights have been violated."). This is not to foreclose the availability of qualified immunity at trial. But the Court cannot make such a determination at this stage. Defendants' motion for summary judgment on Plaintiff's excessive force claim is therefore denied as it relates to the officers' removal of Plaintiff from Officer Ulin.

B. Tightening of the Handcuffs

Plaintiff separately contends in her opposition to Defendants' motion for summary judgment that Officer Ulin used excessive force when he squeezed her handcuffs after she told him that she was in pain. R. 65 at 8. Defendants argue that Plaintiff is late in bringing her handcuffing argument because she neglected to include any related allegations in her complaint. R. 68 at 7 (citing R. 1 ¶¶ 16-17, 35). They further point out that Plaintiff's mandatory discovery disclosures explicitly state that her excessive force claim is based on her body being "flipped" and make no mention of Officer Ulin tightening her handcuffs. *Id.*

While the Federal Rules of Civil Procedure do not require a plaintiff to plead legal theories, *see Vidimos, Inc. v. Laser Lab Ltd.*, 99 F.3d 217, 222 (7th Cir. 1996), plaintiffs do have "to raise factual allegations in their complaints." *Chessie Logistics*

*Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 859 (7th Cir. 2017). "An attempt to alter the factual basis of a claim at summary judgment may amount to an attempt to amend the complaint." *Id.* (internal citation omitted). The Seventh Circuit has explained that when a new argument is made in a summary judgment brief, the court should "consider whether it changes the complaint's factual theory, or just the legal theories plaintiff has pursued so far." *Id.* at 860 (internal citation omitted). If the change is factual, the plaintiff may be "attempting in effect to amend its complaint, and the district court has discretion to deny the *de facto* amendment and to refuse to consider the new factual claims." *Id.* (internal citation omitted). If the new argument changes a plaintiff's legal theory, the court should consider the consequences of allowing the new theory, including whether the amendment would cause unreasonable delay or make the suit more costly or difficult to defend. *Id.*

Whether Plaintiff's handcuffing argument is viewed as factual or legal in nature, the Court will not consider it at this point in the proceedings. Plaintiff's complaint is devoid of any allegation suggesting that Officer Ulin, or any officer for that matter, tightened her handcuffs. And when Plaintiff provided her mandatory discovery disclosures, which explicitly asked for the facts relevant to her excessive force claim, Plaintiff omitted any allegations concerning the arrest itself. Furthermore, Plaintiff served Officers Ulin, Ibarrientos, and Watts with interrogatories and requests for admission, and no statement or question in those documents alluded to her handcuffing theory. On top of that, Plaintiff deposed all three officers but her counsel didn't ask them any questions that would shed light on

13

whether someone excessively tightened her handcuffs.[3] Finally, even though Plaintiff said at her deposition that an officer tightened her handcuffs after she was arrested, she made the disclosure in response to an indirect question asked by opposing counsel[4], and her attorney did not follow up with any questions signaling that the handcuffing issue would be litigated.

In short, Defendants are correct that the first time Plaintiff signaled that she was pursuing her handcuffing argument was after Defendants moved for summary judgment. *See Chessie Logistics*, 867 F.3d at 860 (finding no abuse of discretion where district court denied *de facto* amendment because plaintiff had not signaled its pursuit of a certain theory until summary judgment). The Court accordingly denies Plaintiff's *de facto* amendment and declines to consider the handcuffing argument as part of her excessive force claim.

To summarize, Defendants' motion for summary judgment regarding Plaintiff's excessive force claim is granted in part and denied in part. The issue at trial will be limited to whether Officers Ibarrientos and Watts used excessive force when they removed Plaintiff from Officer Ulin. Because Plaintiff does not assert that

---

[3] This is especially noteworthy because each officer was deposed months after Plaintiff's deposition. If Plaintiff and her counsel wanted to pursue the handcuffing theory, which first came to light in response to a passing question posed to Plaintiff at her deposition, they had opportunities to ask the officers about it at the subsequent depositions.

[4] "**Q**. Do you know which officer put the handcuffs on you? **A**. The second senior one. The one that was on my son's back. **Q**. And you said they weren't on tight enough? **A**. Yep, he squeezed them until I had the bone hurting. And I told him that, and he squeezed some more." Armstrong Dep. 34:4-11.

Officer Ulin used excessive force when Officers Ibarrientos and Watts removed her, Officer Ulin is dismissed from Count I. *See Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 614 (7th Cir. 2002) ("It is well-established that a plaintiff only may bring a § 1983 claim against those individuals personally responsible for the constitutional deprivation.").

### 2. False Arrest Claim (Count II)

Plaintiff alleges that the Defendant Officers did not have probable cause to arrest her after the incident. R. 1 ¶ 40. To defeat summary judgment on her false arrest claim, Plaintiff must present evidence from which a jury could find there was no probable cause for her arrest. *See Bianchi v. McQueen*, 818 F.3d 309, 322 (7th Cir. 2016) (citing *Wallace v. Kato*, 549 U.S. 384, 386–87 (2007)). An officer has probable cause to effect an arrest if, "at the time of the arrest, the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Williams v. City of Chi.*, 733 F.3d 749, 756 (7th Cir. 2013) (quoting *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009)). The severity of the alleged offense is irrelevant to the probable cause inquiry. *Ray v. City of Chi.*, 629 F.3d 660, 663 (7th Cir. 2011) ("Where a police officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.") (internal quotation and citation marks omitted).

The existence of probable cause "depends, in the first instance, on the elements of the predicate criminal offense(s) as defined by state law." *Abbott*, 705 F.3d at 715. Here, Plaintiff was arrested for resisting and obstructing a police officer under 720 ILCS 5/31-1(a). That statute prohibits a person from "knowingly resist[ing] or obstruct[ing] the performance by one known to the person to be a peace officer . . . of any authorized act within his or her official capacity." Illinois courts have explained that the statute proscribes "a physical act that impedes, hinders, interrupts, prevents or delays the performance of the officer's duties." *People v. McCoy*, 881 N.E.2d 621, 630 (Ill App. Ct. 2008).

Defendant Officers argue that they had probable cause to arrest Plaintiff. The Court agrees. Although Plaintiff disputes the manner in which she touched Officer Ulin, she does not dispute that she knowingly made physical contact with him while he was apprehending Lionel. R. 52-1 at 9 (Armstrong Dep. 29:2-6). Such an act interrupted and impeded Officer Ulin in the course of performing his official duties. Defendant Officers therefore had probable cause to arrest Plaintiff for violating 720 ILCS 5/31-1(a). *See Johnsen v. Vill. of Rosemont*, 2013 WL 3668819, at *3 (N.D. Ill. July 12, 2013) (granting summary judgment on false arrest claim because defendant made physical contact with police lieutenant).

Plaintiff urges a contrary result, arguing that her "minimal contact with the [officers] was not a crime" and that she was entitled under Illinois law to use force in

defense of her son.[5] R. 65 at 12-14. She contends that the facts are in dispute as to whether she reasonably believed that moving Officer Ulin's knee was necessary, and points out that the officers, not her, escalated the situation outside her apartment complex.

These arguments miss the mark. The central inquiry under a false arrest claim is whether the officers had probable cause to effectuate the arrest. As stated, the undisputed facts demonstrate that Plaintiff made physical contact with Officer Ulin while he carried out his official duties. Whether her contact was "minimal" does not change the analysis; Illinois law prohibits any physical act that impedes, hinders, interrupts, prevents, or delays the performance of an officer's duties. *See Abrams v. Walker*, 165 F.Supp.2d 762, 767 (N.D. Ill. 2001) (rejecting similar argument). Furthermore, even if Plaintiff had a defense to the underlying criminal charge, probable cause to arrest may still exist. *See Kasey v. McCulloh*, 2011 WL 1706092, at *4 (N.D. Ill. May 5, 2011) (concluding that defendant's right to act in self-defense did not preclude probable cause finding for his arrest). Probable cause turns on whether a reasonable person in the officers' shoes, knowing what Plaintiff did, would have believed that Plaintiff violated the law. As there is no dispute that Plaintiff knowingly made physical contact with Officer Ulin while he was apprehending Lionel, summary judgment is granted in favor of Defendants on Plaintiff's false arrest claim.

---

[5] Plaintiff specifically points to 720 ILCS 5/7-13, which provides that "[c]onduct which would otherwise be an offense is justifiable by reason of necessity if the accused was without blame in occasioning or developing the situation and reasonably believed such conduct was necessary to avoid a public or private injury greater than the injury which might reasonably result from his own conduct."

### 3. Failure to Intervene Claim (Count III)

Plaintiff alleges that the Defendant Officers failed to intervene. R. 1 ¶¶ 44-47. To succeed on her claim, Plaintiff must demonstrate that the officers "(1) knew that a constitutional violation was committed; and (2) had a realistic opportunity to prevent it." *Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017); *see also Sanchez v. City of Chi.*, 700 F.3d 919, 929 (7th Cir. 2012) ("[F]ailure to intervene" is a form of "personal involvement" that does not require actual "participat[ion] in [the] misconduct").

Plaintiff argues that the officers failed to intervene twice. The first failure occurred when the officers falsely arrested her; according to Plaintiff, the officers filed false police reports and one of them should have stepped in to prevent her arrest. R. 65 at 15-16. The second failure occurred when Officers Ibarrientos and Watts did not stop Officer Ulin from tightening Plaintiff's handcuffs. *Id.* at 16.

The problem for plaintiff is twofold. First, for the reasons stated *supra*, her false arrest claim is dismissed, which means that her failure to intervene claim based on the false arrest must be dismissed too. *See Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005) ("In order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation."). Second, the Court already concluded that Plaintiff's excessive force claim cannot be based on the tightening of her handcuffs. As explained, Plaintiff waited until summary judgment to argue that her excessive force claim was based in part on the handcuffs. But even if the Court recognized Plaintiff's handcuffing argument here, her failure to intervene claim still

18

fails because she does not point to any evidence in the record (nor can the Court find any) indicating that the other officers *knew* Officer Ulin tightened her handcuffs. *See Celotex Corp.*, 477 U.S. at 323 (holding that summary judgment is proper where non-moving party fails "to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof"). Summary judgment is therefore granted in favor of Defendants on Plaintiff's failure to intervene claim.

## II. State Law Claims

### 1. Malicious Prosecution Claim (Count IV)

Plaintiff alleges that the Defendants maliciously prosecuted her following the incident. The elements of a malicious prosecution claim in Illinois are: "(1) the commencement or continuance by the defendant of an original judicial proceeding against the plaintiff; (2) termination of the original proceeding in favor of the plaintiff; (3) absence of probable cause for the proceeding; (4) malice; and (5) special damages." *Grundhoefer v. Sorin*, 20 N.E.3d 775, 780 (Ill. App. Ct. 2014). Officers Ulin, Ibarrientos, and Watts each filed criminal complaints against Plaintiff for obstructing a police officer. *See* R 67-9 at 1, 4-5. Officers Ibarrientos and Watts separately filed criminal complaints against Plaintiff for resisting a police officer. *See id*. 2-3. Plaintiff was found not guilty on all charges by a directed verdict. R. 69 ¶ 29.

The Court first determines whether Plaintiff may pursue her malicious prosecution claim against Officer Watts. As stated, the termination of a proceeding in favor of the plaintiff is a required element of a malicious prosecution claim. Plaintiff was found not guilty on all charges, but the prosecutor filed before trial a

*nolle prosequi* motion regarding Officer Watts's criminal complaints. *See* R. 66 ¶ 43. Defendants say that the motion was filed not for any reason related to Plaintiff's innocence, but because Officer Watts was no longer employed by the Village of Bellwood by the time the case went to trial and never appeared to testify. Plaintiff counters that Officer Watts's employment status is immaterial to his non-appearance at trial, which she says is indicative of her innocence.

Under Illinois law, a *nolle prosequi* does not dispose of a case on its merits, but merely "reverts the matter to the same condition which existed before the commencement of the prosecution." *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996) (quoting *People v. Woolsey*, 564 N.E.2d 764, 766 (Ill. 1990)). "For purposes of a malicious prosecution action, the plaintiff has the burden to prove that the *nolle prosequi* was entered for reasons related to his innocence." *Lund v. City of Rockford, Illinois*, 956 F.3d 938, 949 (7th Cir. 2020) (quoting *Swick*, 662 N.E.2d at 1242). "The circumstances surrounding the abandonment of the criminal proceedings must compel an inference that there existed a lack of reasonable grounds to pursue the criminal prosecution." *Id*.

As best the Court can tell, both parties seem to agree that Officer Watt's criminal complaints were dismissed because he did not appear to testify.[6] But this

---

[6] Plaintiff does not offer any other explanation as to why the prosecutor filed a *nolle prosequi* motion regarding Officer Watts's criminal complaints. At most, she says that Officer Watts's non-appearance at trial is indicative of her innocence. But Illinois law places the burden on Plaintiff to show that the *nolle prosequi* was entered for reasons specifically related to her innocence.

reason in and of itself is not related to Plaintiff's innocence. Indeed, a complaining officer may miss trial for a host of reasons unrelated to whether the defendant actually committed the underlying charge. And here, given that Officer Watts supposedly did not work at the Bellwood Police Department at the time of Plaintiff's trial, it's possible that he did not even know that it had been scheduled. Furthermore, the prosecutor in the criminal case pursued the resisting and obstruction charges against Plaintiff without also moving to file a *nolle prosequi* motion in regards to Officer Ibarrientos' criminal complaints, which are almost identical to Officer Watts'. The circumstances surrounding the abandonment of Officer Watts's criminal complaints therefore fail to compel an inference that they were dropped for reasons related to Plaintiff's innocence. *See Lund*, 956 F.3d at 949. For these reasons, and because Plaintiff has otherwise failed to meet her burden, the Court dismisses the malicious prosecution claim against Officer Watts.

That leaves Officers Ulin and Ibarrientos. As the Court noted regarding Plaintiff's false arrest claim, the officers had probable cause to arrest Plaintiff for obstructing a police officer. The undisputed facts show that she made physical contact with Officer Ulin while he was apprehending her son. *See* Armstrong Dep. 29:2-7 (Plaintiff explaining that she "took two fingers, [and] moved [Ulin's] knee off my son's spinal back"); 720 ILCS 5/31-1 (making it unlawful to "knowingly resist[] or obstruct[] the performance by one known to the person to be a peace officer . . . of any authorized act within his or her official capacity"). Because the officers had probable cause, Plaintiff cannot proceed on her malicious prosecution claim as to the obstruction

charge. *Hart v. Mannina*, 798 F.3d 578, 587 (7th Cir. 2015) (explaining that probable cause to arrest defeats a claim for malicious prosecution).

Nevertheless, the Seventh Circuit has instructed that "probable cause as to one charge will not bar a malicious prosecution claim based on a second, distinct charge as to which probable cause was lacking." *Holmes v. Vill. of Hoffman Estate*, 511 F.3d 673, 682 (7th Cir. 2007).[7] Applying that rule here, the relevant question is whether Officer Ibarrientos had probable cause to initiate the charge for resisting a police officer even if he had probable cause to initiate the charge for obstruction. At this stage in the proceedings, the Court cannot say. According to Officer Ibarrientos's criminal complaint, Plaintiff was arrested because she refused to follow orders to place her hands behind her back. *See* R. 67-9 at 2. At his deposition, Officer Ibarrientos further explained that Plaintiff "[didn't] want to be controlled" and was "swinging back and forth." R. 52-1 at 44 (Ibarrientos Dep. 87:17-19). But Plaintiff contests this account; she says that her house shoe fell off and she was simply trying to put it back on. *See* R. 52-1 at 14 (Armstrong Dep. 49:17-22). Assuming Plaintiff's version of the facts is correct, as the Court must at this stage, a jury could conclude

---

[7] The *Holmes* court explained that this is one way in which a malicious prosecution claim is treated differently than a false arrest claim. "[W]hereas probable cause to believe that a person has committed any crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause, probable cause as to one charge will not bar a malicious prosecution claim based on a second, distinct charge as to which probable cause was lacking." *Id.* (internal citations omitted). 511 F.3d at 682.

that Officer Ibarrientos lacked probable cause to charge Plaintiff with resisting a police officer. Summary judgment is therefore denied.

On a final note, the Court addresses the Defendants' separate argument that Plaintiff has failed to put forth evidence establishing that Officer Ibarrientos acted with malice. Illinois courts have stated that "[m]alice, as an element of malicious prosecution, does not necessarily mean personal ill-will, spite or hatred toward the person prosecuted." *Turner v. City of Chi.,* 415 N.E.2d 481, 487 (Ill. App. Ct. 1980). A jury may infer malice from a lack of probable cause. *Fabiano v. City of Palos Hills,* 784 N.E.2d 258, 274 (Ill. App. Ct. 2002). In this case, a jury may decide that Officer Ibarrientos lacked probable cause to initiate the charge for resisting a police officer; thus, a jury may be able to infer malice as well. Summary judgment is accordingly denied as to Officer Ibarrientos on the resisting a police officer charge, but granted to Officers Watts and Ulin.

## 2. State Law Conspiracy to Commit Malicious Prosecution Claim (Count V)

Plaintiff alleges that the officers conspired to commit malicious prosecution. A civil conspiracy claim under Illinois law requires showing: (1) a combination of two or more individuals, (2) for the purpose of accomplishing by concerted action an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act. *Fritz v. Johnston*, 807 N.E.2d 461, 470 (2004). Plaintiff argues here that the "officers took the overt acts of swearing criminal complaints that alleged Ms. Armstrong jumped on top of Officer Ulin, or onto his back, for the unlawful purpose of bringing false charges against Ms.

Armstrong." R. 65 at 22. But the Court already found that the officers are entitled to summary judgment on her malicious prosecution claim stemming from the obstruction charge. Plaintiff therefore cannot establish the third element of her civil conspiracy claim. *See Beaman v. Freesmeyer*, 2019 IL App (4th) 160527, ¶ 126 (affirming summary judgment on civil conspiracy to commit malicious prosecution claim where there was no underlying malicious prosecution).

Plaintiff's claim is problematic for another reason: she fails to establish an agreement between the co-conspirators. "In order to connect a defendant to an alleged civil conspiracy, the plaintiff must prove the existence of an agreement between the co-conspirators, *i.e.*, that the defendant knowingly and voluntarily participated in the common scheme at the heart of the alleged civil conspiracy." *Hale v. Travelers Indem. Co.*, 2019 IL App (1st) 18-2707-U, ¶ 69, *appeal denied*, 140 N.E.3d 240 (Ill. 2020) (citing *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994)). Without citing any part of the record, Plaintiff summarily declares that the officers "likely 'huddled up' to discuss incident reports prior to submitting them." R. 65 at 22. But the record tells a somewhat different story. Indeed, Officer Ibarrientos testified that he never discussed the incident reports with Officer Ulin. R. 52-1 at 46 (Ibarrientos Dep. 95:15-18). Officer Ibarrientos did discuss his report with Officer Watts, but explained that Officer Watts was a trainee at the time of the incident and that it is common practice for a trainee to work with a supervisor on an incident report. *Id.* (Ibarrientos Dep. 94:15-20). On these facts, a reasonable jury could not find that the officers engaged

in a civil conspiracy to commit malicious prosecution. Summary judgment is therefore granted.

### 3. State Law Battery Claim (Count VI)

Defendants argue that Plaintiff's state law battery claim should be dismissed if the Court dismisses her § 1983 excessive force claim. Defendants offer no other arguments explaining why Plaintiff's battery claim should be dismissed. Because the Court declines to dismiss Plaintiff's excessive force claim, it also declines to dismiss Plaintiff's state law battery claim.

### 4. State Law Intentional Infliction of Emotional Distress Claim (Count VII)

To recover on a claim for intentional infliction of emotional distress (IIED), Illinois law requires Plaintiff to prove: "(1) that the conduct was extreme and outrageous, (2) that the actor intended that his conduct inflict severe emotional distress or knew that there was a high probability that his conduct would inflict such distress, and, (3) that the conduct in fact caused severe emotional distress." *Bailey v. City of Chi.*, 779 F.3d 689, 696 (7th Cir. 2015) (citing *Schiller v. Mitchell*, 828 N.E.2d 323, 333 (Ill. App. Ct. 2005).

Defendants contend that summary judgment is proper because the officers' conduct was not "extreme and outrageous". The Court agrees. In defining "extreme and outrageous," the Illinois Supreme Court has held that "the nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized society." *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 83 (Ill. 2003). "[M]ere insults, indignities, threats, annoyances, petty

oppressions, or other trivialities" do not amount to extreme and outrageous conduct, nor does conduct "characterized by malice or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Public Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976). "[W]hether conduct is extreme and outrageous is judged on an objective standard based on all the facts and circumstances of a particular case." *Franciski v. Univ. of Chi. Hosps.*, 338 F.3d 765, 769 (7th Cir. 2003).

Furthermore, in situations involving use of force, courts have recognized that "[n]ot every battery will satisfy the extreme and outrageous element." *Whitney v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 2019 WL 218801, at *9 (N.D. Ill. Jan. 16, 2019). Indeed, the element is met only when "the force used ... [is] very extreme or cause[s] very severe physical injury." *DuFour-Dowell v. Cogger*, 969 F. Supp. 1107, 1123 (N.D. Ill. 1997). This is a high bar, and one that cannot be crossed easily. *See, e.g.*, *Whitney*, 2019 WL 218801, at *9 (granting summary judgment on IIED claim where officer struck plaintiff and used a choke hold to effectuate an arrest); *McDade v. City of Chi.*, 264 F. Supp. 2d 730, 732 (N.D. Ill. 2003) (granting summary judgment on IIED claim where officer shoved plaintiff against a porch railing); *DuFour-Dowell v. Cogger*, 969 F. Supp. 1107, 1116 (N.D. Ill. 1997) (dismissing IIED claim where officer "grabbed [plaintiff's] arm, gave her a hard jerk, and forced her face down on the floor with her arm behind her back"); *Carr v. Vill. of Richmond*, 1996 WL 663921, at *8 (N.D. Ill. Nov. 15, 1996) (dismissing IIED claim where officer "slammed [plaintiff] against the trunk of the squad car, grabbed her by her pony tail, and threw her into the squad

car," and explaining that "[e]ven if the force is unlawfully excessive, that alone does not make it extreme and outrageous").

Here, drawing all inferences in Plaintiff's favor, the evidence shows that in a relatively brief single episode, Plaintiff ran past Officers Ibarrientos and Watts, and made physical contact with Officer Ulin while he attempted to apprehend Lionel. In a matter of seconds, Officers Ibarrientos and Watts then flipped Plaintiff and subsequently arrested her. This use of force, though potentially excessive, is not beyond all possible bounds of decency. Nor were Plaintiff's injuries very severe—she stated at her deposition that she suffered from a bruised leg and was "sore for a moment here and there." R. 52-1 at 10 (Armstrong Dep. 32:14-18). While Plaintiff argues that her private parts were exposed, one officer testified at his deposition that he didn't initially realize that she was only wearing a robe because "we were concerned all about the safety." *See* Ibarrientos Dep. 75:17-20. Defendants' motion for summary judgment on the IIED claim is granted.

### 5. Indemnification Claim (Count VIII)

Count VIII asserts a claim for indemnification against the Village of Bellwood under 745 ILCS 10/9–102, which provides that a local public entity "is directed to pay any tort judgment or settlement for compensatory damages (and may pay any associated attorney's fees and costs) for which it or an employee while acting within the scope of his employment is liable." The Village moves for summary judgment on Count VIII on the grounds that Plaintiff cannot establish liability against the officers,

so there is nothing to indemnify. R. 51 at 19. But because claims in this case are moving forward, the Village's motion is denied with respect to Count VIII.

### 6. The Tort Immunity Act

Defendants finally argue that for any state law claim that might expose them to liability, the Local Governmental and Governmental Employees Tort Immunity Act cloaks them with immunity. 745 ILCS 10/2-201 *et seq*. Section 202-2 of that act provides that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." *Id*. at 10/2-202. The statute defines "willful and wanton conduct" as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." *Id*. at 10/1-210. "Whether an officer acted in such fashion 'is normally a question of fact to be determined by the jury.'" *Chelios v. Heavener*, 520 F.3d 678, 693 (7th Cir. 2008) (quoting *Stamat v. Merry*, 397 N.E.2d 141, 145 (Ill. App. Ct. 1979)).

Defendants point out that the existence of probable cause negates a finding of willful and wanton behavior. R. 51 at 19 (quoting *Ross v. Mauro Chevrolet*, 861 N.E.2d 313 (2006)). They are correct; actions are not willful and wanton if they are "objectively reasonable" under the Fourth Amendment. *See Horton*, 883 F.3d at 954 (affirming district court holding that, since the officer's actions were objectively reasonable, "they cannot be willful and wanton"). But depending how the facts are sorted out, a reasonable jury could find that Officer Ibarrientos's filing of a

misdemeanor complaint for resisting a police officer was willful and wanton given that Plaintiff says she was simply trying to put her house shoe back on. *See Whitney*, 2019 WL 218801, at *10. Summary judgment is therefore denied on this basis alone.

## Conclusion

For the reasons stated above, Defendants' motion for summary judgment, R. 50, is denied in part and granted in part. Plaintiff's claims for excessive force (not tightening of handcuffs), malicious prosecution, battery, and indemnification are moving forward. Plaintiff's false arrest, failure to intervene, conspiracy to commit malicious prosecution, and intentional infliction of emotional distress claims are dismissed. A bench trial is set to begin on March 1, 2021. In the meantime, a telephone status conference is set for January 19, 2021 at 9:00 am to discuss the feasibility of the trial date.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: January 15, 2021